# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| VAN LYNN OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-CV-132 AGF |
| | ) | |
| MISSISSIPPI COUNTY DETENTION | ) | |
| CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Self-represented Plaintiff Van Lynn Owens brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights.  The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs.  ECF No. 2.  Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and waive the initial partial filing fee at this time.  *See* 28 U.S.C. § 1915(a)(1).  Based on a review of the complaint under 28 U.S.C. § 1915(e)(2)(B), the Court will direct Plaintiff to file an amended complaint on the court-provided form in compliance with the instructions set out below.  Furthermore, as there is no constitutional right to appointment of counsel in civil cases and it would be premature to grant appointment at this stage in the proceeding, the Court will deny Plaintiff's motion for counsel subject to refiling at a later date. The Court warns Plaintiff that his failure to comply with this Order could result in dismissal of this action.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff is a pretrial detainee, currently being held at Stoddard County Jail.  ECF Nos. 1 at 2, 4 at 1.  Plaintiff submitted an application to proceed in district court without prepaying fees or costs and an account statement from the Mississippi County Detention Center, where he was previously detained.  ECF Nos. 2, 5; *see also* ECF No. 4 at 1 (stating that the account statement came from Mississippi County Detention Center).  Based on this financial information, the Court will not assess an initial partial filing fee at this time.  *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district

court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  *Id.* at 679.

### The Complaint

Plaintiff is a pretrial detainee.  He was being held at the Stoddard County Jail at time of case initiation; however, the allegations of the complaint pertain to his time at the Mississippi County Detention Center.  Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against four defendants: (1) Mississippi County Detention Center; (2) Britton Ferrell[1] (sheriff); (3) Mitch Pullen (county commissioner); and (4) Joe Ross (jail administrator).  ECF No. 1 at 1-3.  Plaintiff brings suit against Ferrell in both his individual and official capacities, against Pullen in just his official capacity, and he does not specify capacity against Ross.  *Id.*

---

[1] Based on the handwriting in Plaintiff's complaint, this defendant was originally docketed as "Britton Zerrell."  Upon receipt of a letter from Plaintiff on October 1, 2021, the docket sheet was corrected to reflect the spelling "Britton Ferrell," as directed by Plaintiff.  *See* ECF No. 4 at 1.

Plaintiff's basic complaint is that he was denied medical care by Defendants after a fall. *Id.* at 3. According to the statement of claim, Plaintiff fell down the steps of the Mississippi County Courthouse on June 30, 2021, injuring his left shoulder. Plaintiff alleges that following the fall, Defendant Sheriff Ferrell refused to take Plaintiff to a doctor. Plaintiff asserts that he was also refused medical attention by County Commissioner Pullen and Jail Administrator Ross, based on Sheriff Ferrell's order. *Id.*

Plaintiff includes a chronological list of "Miss Co Jail Complaints" that occurred between June 24, 2021 (his date of arrest) and July 14, 2021. *Id.* at 4-6. According to the list, Plaintiff actually first requested medical attention for his "left rotator cup" from Administrator Ross on June 25, 2021 – five days before Plaintiff fell down the steps. *Id.* at 4. The next day, Plaintiff again requested to see a doctor, telling Ross that his rotator cup was "broke" and requesting pain medication. Ross told him that the decision was up to Sheriff Ferrell, who then walked by and told Plaintiff not to "start [his] medical sh*t." Four days later, Plaintiff fell on "the last 3 steps going down" when leaving the courthouse, landing on his left shoulder. Plaintiff informed the transport officer that he had hurt his shoulder. Plaintiff states: "no medical attention." *Id.*

However, on the entry for the day after the fall, Plaintiff provides an "Imaging Claim" number and indicates that a "Radiology Report" was made, but he does not provide the report or detail the findings. Despite this entry, which seems to indicate that some testing was done, Plaintiff states "still no medical attention" for the subsequent four dates. Five days after the fall, Plaintiff reports that Sheriff Ferrell came to his cell and Plaintiff showed him the "Radiology Report." According to Plaintiff, when a non-party nurse named Amy Ross brought him the report, she told him that there was "nothing wrong" with him.

The following day, Nurse Ross checked on Plaintiff in his cell. Plaintiff requested to see a doctor and Nurse Ross said she would ask the Sheriff. Plaintiff states: "still no medical

attention." *Id.*  Plaintiff asked Administrator Ross to see a doctor the next day, saying that his shoulder "was in continuous pain." *Id.* at 5.  And the day after, Plaintiff asked a non-party jailer Daniel three times over a three-hour period to send either Nurse Ross or Sheriff Ferrell.  When Nurse Ross came, Plaintiff told her he was in "continuous pain in [his] left shoulder" and that he needed to see a doctor.  She again stated that it was up to the Sheriff.

On July 10, ten days after the fall, Plaintiff requested a copy of his Radiology Report. Someone named "Linda" told Plaintiff that Administrator Ross said not to give Plaintiff a copy of his "report, results or conclusion."  Plaintiff responded that he was being mistreated and he feared for his life.  On the following day, when Plaintiff "was hurting" with "no medical attention or pain relief or seen by any medical staff," Nurse Ross told him that she couldn't help him and Administrator Ross told him that Sheriff Ferrell said "no" to Plaintiff going to the hospital for his shoulder.  *Id.*  When Plaintiff asked Nurse Ross later that day to see a doctor, Plaintiff was told that "Doctor Douglas had a heart attack." *Id.* at 6.  Dr. Douglas's health problems seemed to be preventing Plaintiff from getting his "shoulder checked out & pain medicine or urgent care."

Thirteen days after the fall, Plaintiff was taken "to see [the] same Doctor as the last time that refused to examine [his] shoulder."  Plaintiff showed the Doctor his Radiology Report "that Britton Ferrell falsified by highli[ghting] the conclusion."  Finally, as of July 14, 2021 (fourteen days after the fall down the steps which injured his shoulder), Plaintiff reports that he is "still in pain from shoulder" and that he "can't sleep [from the] constant pain."  He states: "no medical attention or pain medication." *Id.*

Plaintiff ends the 'Statement of Claim' section of the complaint with the following list:

1: Deliberate indifference of medical needs.
2: Denied use of grievance procedures.
3: Only allowed 3 showers in 3-week period.
4: Confined to holding cell in booking [area during] stay in Jail.
5: Not allowed to contact family.
6: Not allowed to contact Bondsman.

7: Not allowed to contact my attorney.

*Id.* at 7.  Later in the complaint when asked whether Plaintiff exhausted his claims through the grievance procedure, Plaintiff explains that Defendants kept him "in holding cell in Booking area where there is no way to provide or file any grievances unless done verbally."  *Id.* at 10.

Plaintiff left the 'Injuries' section of the complaint blank.  *Id.*  For relief, Plaintiff seeks $600,000 in punitive and "realitive damages."  *Id.* at 8.

## Discussion

Based on a careful review and liberal construction of the complaint, Plaintiff has not adequately alleged claims to withstand review under 28 U.S.C. § 1915(e)(2).  Because Plaintiff is self-represented and has presented serious allegations to the Court, he will be allowed to amend his complaint in accordance with the instructions set forth below.  Plaintiff should consider the following legal issues in filing in his amended complaint.

## I.    Deficiencies in Pleading Deliberately Indifferent Medical Care Claim

Plaintiff attempts to assert a claim of deliberately indifferent medical care.  The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).  However, this makes little difference as both pretrial detainees and convicted prisoners have the Constitutional protection of the Eighth Amendment.  *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims

- 6 -

made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

The Eighth Amendment prohibits cruel and unusual punishment and limits conditions of confinement. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)).

A jail official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations and citation omitted).

In this case, Plaintiff alleges that he has a medical problem with his left shoulder. Although he seems to indicate that the problem resulted from a fall down three steps on June 30, 2021, he also admits to complaining prior to the fall about his "left rotator cup" being "broke." ECF No. 1 at 4. It is unclear from the complaint when the left shoulder problem occurred and how long Plaintiff suffered from the injury.

Plaintiff also alleges that he received "no medical attention" for his shoulder injury. However, he makes multiple references to a Radiology Report that has "results and conclusions," but he does not state what they are. *Id.* The only indication given as to the results of the Report are that Nurse Ross said nothing was wrong. Also, Plaintiff makes a reference to a doctor that he had previously seen who had refused to examine his shoulder. These factual allegations all seem to indicate that Plaintiff did receive some medical evaluation of his shoulder.

Finally, Plaintiff filed this case in early September 2021, yet the allegations of his complaint detail treatment between June 24 and July 14, 2021. It is unclear whether Plaintiff received medical attention or pain medication between July 14 and the September complaint filing and whether he still has a shoulder problem. Furthermore, Plaintiff left the 'Injuries' section of the complaint blank. Based on the factual pleadings in the complaint, the Court can not assess whether Plaintiff has a serious medical need and whether Defendants at the Mississippi County Detention Center have intentionally denied or delayed access to medical care for the shoulder injury. However, because Plaintiff presents serious allegations, the Court will direct the Plaintiff to file an amended complaint in an attempt to cure these pleading deficiencies.

## II.     Other Legal Deficiencies of the Complaint

### A. Defendant Mississippi County Detention Center

Plaintiff's claims as to defendant Mississippi County Detention Center are subject to dismissal for failure to state a claim because jails and local government detention centers are not suable entities under 42 U.S.C. § 1983. *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (affirming dismissal of § 1983 claim because "county jails are not legal entities amenable to suit."); *De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (holding that neither county jail nor sheriff's department is a suable entity under § 1983); *see also Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (holding that departments

or subdivisions of local government are "not juridical entities suable as such" under § 1983). According to the Eighth Circuit, "pro se status does not excuse [Plaintiff's] failure to name the proper parties." *Jackson v. Mo. Bd. of Prob. & Parole*, 306 F. App'x 333, 333 (8th Cir. 2009). As such, Plaintiff's complaint fails to state a valid § 1983 claim as to defendant Mississippi County Detention Center.

### B.  Other Possible § 1983 Claims

Plaintiff's allegations suggest that he may be trying to assert other possible § 1983 claims. A self-represented complaint is liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson*, 551 U.S. at 94. Nevertheless, such pleadings cannot be conclusory, and must set forth facts that, taken as true, state a claim as a matter of law. *Johnson v. Stark*, 717 F.2d 1550, 1552 (8th Cir. 1983). A court will not supply additional facts or create a legal theory assuming facts that have not been pleaded. *Stone*, 364 F.3d at 914.

First, Plaintiff alleges that he was only allowed three showers in a three-week period. As discussed above, a pretrial detainee's Fourteenth Amendment rights are violated if the detainee's conditions of confinement amount to punishment. *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). Accordingly, punishment that deprives an inmate "of the minimal civilized measures of life's necessities is unconstitutional." *Id.* Furthermore, pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). The length of time an inmate endures an allegedly unconstitutional condition of confinement is a factor in determining whether there has been a constitutional violation.

The Court notes that, in another case involving a pretrial detainee's access to a shower, the Eighth Circuit found no constitutional violation where a prisoner was only able to shower fifteen times in six months, including a twenty-eight-day period without a shower. *Scott v. Carpenter*, 24

Fed. App'x. 645, 647-48 (8th Cir. 2001).  The alleged time between showers here (approximately a week) is much less than in *Scott v. Carpenter*.  Based on this precedent, Plaintiff's allegations as currently stated concerning inadequate opportunities to shower fail to state a § 1983 claim of constitutional dimension.

Second, Plaintiff complains that, immediately upon his arrest, Sheriff Ferrell threatened him about making medical complaints.  ECF No. 1 at 4.  "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim."  *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983").  In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest."  *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) (citations omitted).

To determine whether a constitutional line has been crossed by a verbal threat making it redressable under § 1983, a court looks to whether it "caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience."  *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015) (citing *Hopson*, 961 F.2d at 1378 (quotation omitted)).  Here, Plaintiff alleges no injury from Sheriff Ferrell's threats. There is no allegation of brutality, wanton cruelty, or coercive pressure as pertains to Ferrell's threat.  Therefore, such allegations as plead do not state a § 1983 claim for relief.

Third, Plaintiff alleges that he was not allowed to contact his family, bondsman, or attorney.  ECF No. 1 at 7.  Plaintiff does not state who denied him these contacts, as he does not allege these claims against any of the named Defendants specifically.  However, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  *Madewell*

*v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

Plaintiff also does not state how long he was denied these contacts.  To the extent that Plaintiff is claiming a right to phone access, the Eighth Circuit has made it clear that detained persons have no right to unrestricted phone use.  *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1038-39 (8th Cir. 2012).  Based on the factual allegations provided in the complaint, Plaintiff fails to state a § 1983 claim involving lack of access to contact people outside the jail.

**III.    Amended Complaint Instructions**

Plaintiff should file an amended complaint in an attempt to cure the pleading deficiencies in his medical deliberate indifference claim.  Plaintiff is advised that the filing of an amended complaint **completely replaces** the original complaint and all supplements, and so it must include all claims Plaintiff wishes to bring.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").  Any claims from the original complaint or any supplements that are not included in the amended complaint will be deemed abandoned and will not be considered.  *Id*.  Plaintiff must **type or neatly print** the amended complaint on the Court-provided prisoner civil rights complaint form, and the amended complaint must comply with the Federal Rules of Civil Procedure.  *See* E.D. Mo. L.R. 2.06(A).

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner.  Even self-represented litigants are obligated to abide by the Federal Rules of Civil Procedure and to plead specific facts as to each named defendant.  *See U.S. v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).  Plaintiff is required to set out his alleged claims

in a simple, concise, and direct manner, and also the facts supporting his claims as to each named defendant.  *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); 8(d)(1) (each claim shall be simple, concise, and direct); 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances).  Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, Plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue.  *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties").  If there is not enough room in the caption, Plaintiff may add additional sheets of paper.  However, all the defendants must be clearly listed.  Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both.  Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim(s).

In the "Statement of Claim" section, Plaintiff should begin by writing a defendant's name.  In separate, numbered paragraphs under that name, Plaintiff should write the specific facts supporting his claim or claims against that defendant.  If Plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant.  Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other.  *See* Fed. R. Civ. P. 20(a)(2).  Alternatively, Plaintiff may choose a single defendant, and set forth as many claims as he has against him or her.  *See* Fed. R. Civ. P. 18(a).  Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal.  Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or

a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). It is not enough for Plaintiff to refer to a group of defendants and make general allegations against them. Instead, Plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

If Plaintiff fails to file an amended complaint on a Court-provided form within **thirty (30) days** in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to Plaintiff.

**Appointment of Counsel**

Finally, Plaintiff has filed a motion for appointment of counsel. ECF No. 3. The appointment of counsel for an indigent plaintiff in a civil matter lies within the discretion of the Court. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). Once the plaintiff has alleged a *prima facie* claim, the Court must determine the plaintiff's need for counsel to effectively litigate his claim. *In re Lane*, 801 F.2d 1040, 1043 (8th Cir. 1986). The standard for appointment of counsel in a civil case is whether both the plaintiff and the Court would benefit from the assistance of counsel. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds by Doe v. Cassel*,

403 F.3d 986, 989 (8th Cir. 2005).    This determination involves the consideration of several relevant criteria, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments."  *Phillips*, 437 F.3d at 794 (citing *Edgington*, 52 F.3d at 780).

In this matter, the Court finds that appointment of counsel is not warranted at this time. The action appears to involve straightforward questions of fact rather than complex questions of law.  Further, the request for counsel is premature, as defendants have not yet been served, and the Court has not issued any Case Management Order.  The Court concludes that the appointment of counsel would not be of sufficient benefit to the Court or to Plaintiff at this time, and will deny Plaintiff's motion for appointment of counsel, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.  Pursuant to 28 U.S.C. § 1915(b)(4), the initial partial filing fee is waived.

**IT IS FURTHER ORDERED** that the institution having custody of Plaintiff shall, whenever the amount in Plaintiff's prison account exceeds $10.00, send monthly payments that equal 20 percent of the funds credited to the account the preceding month to the United States District Court for the Eastern District of Missouri Clerk's office, pursuant to 28 U.S.C. § 1915(b)(2), until the filing fee of $350 is paid in full.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to Plaintiff a blank copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **thirty (30) days** of the date of this Order, Plaintiff shall file an amended complaint on the Court-provided form and in compliance with the Court's instructions.

**IT IS FURTHER ORDERED** that upon submission of the amended complaint, the Court shall again review this action pursuant to 28 U.S.C. §1915.

**IT IS FINALLY ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED without prejudice**.

**Plaintiff's failure to timely comply with this Order shall result in the dismissal of this action, without prejudice and without further notice.**

Dated this 8th day of December 2021.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE